Rick KOENIG, Plaintiff–Appellant,

v.

Daniel VANNELLI; Douglas Trudeau, et al., Defendants–Appellees.

No. 91–16797.

United States Court of Appeals, Ninth Circuit.

Submitted * July 27, 1992.

Decided Aug. 4, 1992.

Rick Koenig, pro se.

No appearance for defendants-appellees.

Before: WRIGHT, FARRIS and BEEZER, Circuit Judges.

PER CURIAM:

Koenig, an Arizona prison inmate, tested positive for marijuana use in a random drug test. When prison officials repeated the ADx test,[1] Koenig again tested positive. Prison officials cited him for a positive drug screen test. Before his disciplinary hearing, Koenig requested a gas liquid chromatography-mass spechtrometer test [2] performed by an independent laboratory at his own expense to confirm the results of the immunoassay test. The prison officials denied it. Koenig was found in violation of prison regulations.

Koenig filed a civil rights complaint under 42 U.S.C. § 1983 against the prison officials. He alleged that their denial of his request for an independent drug test violated due process. The district court dismissed, and Koenig appeals pro se. He argues that the court erred in failing to consider his right to call witnesses and present evidence at a disciplinary hearing.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); Ninth Circuit Rule 34–4.

1. The ADx test is a fluorescein polarization immunoassay test (FPIA) that is used to detect marijuana and other drugs in biological fluids. When properly performed, FPIA tests for cannabinoids are generally accurate. Richard H. Schwartz, M.D., *Urine Testing in the Detection of*
*Drugs of Abuse*, 148 Archives of Internal Medicine 2407 (November 1988).

2. The gas liquid chomatography-mass spechtrometer test is widely used to confirm samples that test positive by immunoassay methods. "It is ... 100% accurate in determining precisely which drugs have been used by the tested individual." *Pella v. Adams*, 702 F.Supp. 244, 246 (D.Nev.1988).

An inmate facing disciplinary hearings may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974); *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason. *Pella v. Adams,* 702 F.Supp. 244, 248 (D.Nev.1988), *modified,* 723 F.Supp. 1394 (D.Nev.1989). Prison officials may explain their reasons at the disciplinary hearing or later. *Ponte,* 471 U.S. at 497, 105 S.Ct. at 2196.

In *Pella,* prison officials denied an inmate's request for an additional drug test performed at this own expense to confirm the results of an immunoassay test. *Pella,* 723 F.Supp. at 1394. The inmate filed a civil rights complaint based on the same denial of due process rights alleged by Koenig. Following an evidentiary hearing to determine the reasons for denial of the inmate's request, the court held that the denial had a legitimate penological purpose for two reasons. *Id.* at 1395–96. First, accommodating the inmate's asserted right would create a "ripple effect" among other prisoners, and impose a significant administrative burden on prison officials. *Id.* Second, not every inmate could afford independent tests. *Id.* at 1396.

The *Pella* court's reasoning is persuasive. The Arizona prison officials legitimately could deny Koenig's request for an additional drug test.

AFFIRMED.